UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMOND DAVIS,                                            Case No. 18-13576

                      Plaintiff,           Nancy G. Edmunds
v.                                                      United States District Judge

COMMISSIONER OF SOCIAL                                  Stephanie Dawkins Davis
SECURITY,                                               United States Magistrate Judge

                  Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 11, 12)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On November 16, 2018, plaintiff Demond Davis filed the instant suit. (ECF

No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Nancy G. Edmunds referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying plaintiff's claim

supplemental security income benefits. (ECF No. 3). This matter is before the

Court on cross-motions for summary judgment. (ECF Nos. 11, 12).

    B.    <u>Administrative Proceedings</u>

Davis filed an application for supplemental security income on September

14, 2015, alleging disability beginning December 1, 2011. (Tr. 15). At the

hearing, Davis amended the alleged onset date to September 14, 2015. *Id.* The

claims were initially disapproved by the Commissioner on March 11, 2016. *Id.*

Davis requested a hearing and on February 7, 2018, he appeared with counsel

before Administrative Law Judge ("ALJ") Lauren G. Burstein, who considered the

case *de novo*. (Tr. 28-56). In a decision dated March 14, 2018, the ALJ found that

Davis was not disabled from the amended onset date through the date of the

decision. (Tr. 12-23). The ALJ's decision became the final decision of the

Commissioner when the Appeals Council, on September 19, 2018, denied Davis'

request for review. (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44

(6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

Davis, born March 22, 1993, was 22 years old on the amended alleged

disability onset date. (Tr. 11). His claim is based on residual pain and injuries

from a gunshot wound in his back. (Tr. 211). Specifically, Davis says he is unable

to work because he cannot stand for long and he cannot bend at all. (Tr. 224). He

also says that his legs give out at times. (Tr. 228). He uses a cane and a neck/back

brace.  (Tr. 230).  Davis stopped working on December 1, 2011 because he was

working for a temp service and they stopped calling him.  (Tr. 211).  Davis lives

with his girlfriend, her mother, and his two young children.  (Tr. 31).

The ALJ applied the five-step disability analysis and found at step one that

Davis had not engaged in substantial gainful activity since the amended alleged

onset date.  (Tr. 17).  At step two, the ALJ found that Davis' gunshot wound to the

right flank, lumbar radiculopathy, and migraines were "severe" within the meaning

of the second sequential step.  *Id*.  However, at step three, the ALJ found no

evidence that Davis' impairments singly or in combination met or medically

equaled one of the listings in the regulations.  (Tr. 17-18).  The ALJ assessed

plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that
> the claimant has the residual functional capacity to
> perform sedentary work as defined in 20 CFR 416.967(a)
> except that he can occasionally climb ramps and stairs;
> never climb ladders, ropes, or scaffolds; occasionally
> balance; occasionally stoop; never kneel; never crouch;
> and never crawl. Additionally, the claimant must have a
> sit/stand option in 15 to 20 minute intervals (meaning he
> can sit or stand up to 15-20 minutes at a time).

(Tr. 18).  At step four, the ALJ found that Davis did not have any past relevant

work.  (Tr. 22).  At step five, the ALJ denied Davis benefits because she found that

there were jobs that exist in significant numbers in the national economy that he

could perform.  (Tr. 22-23).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

4

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

   If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health*

*& Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals

and the district court may look to any evidence in the record, regardless of whether

it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245

F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the

ALJ or the reviewing court discuss every piece of evidence in the administrative

record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)

("[a]n ALJ can consider all the evidence without directly addressing in his written

decision every piece of evidence submitted by a party.") (internal citation marks

omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526

(6th Cir. 2006).

B.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform.  (*Id*.).  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

      C.     <u>Analysis and Conclusions</u>

          1.     SSR 17-2p and assessment of Listing 1.04

Davis maintains that the ALJ did not follow SSR 17-2p in her assessment of whether he medically equaled Listing 1.04.  According to Davis, his lumbar CT scan provides objective evidence that the first element of Listing 1.04 is satisfied as it confirms a vertebral fracture and compromise of the spinal cord by compression caused by a gunshot wound.  (Tr. 398).  Davis also points to evidence of a consistent diagnoses of chronic lumbar radiculopathy, which he says satisfies the element of neuro-anatomic distribution of pain.  (Tr. 341, 344, 353, 362, 368, 380, 386).  Davis further points out that physical examinations and reports consistently document decreased range of motion in the lumbar spine, leg weakness and positive Babinski testing, along with evidence of atrophy and muscle weakness.  (Tr. 343, 346, 348, 349, 352, 355, 357, 358, 361, 364, 365, 368, 370, 371, 373, 374, 376, 377, 379, 380, 382, 383, 385, 386, 388, 389, 467, 470, 471).  Davis argues that positive Babinski testing shows compromise of the spinal cord.

According to Davis, the foregoing medical findings show, by a preponderance of the evidence, that his lumbar spine issues could medically equal Listing 1.04.

Davis contends that the ALJ's Listing analysis was overly narrow because while it is partially correct that Listing 1.04 requires the presence of a compromise of a nerve root, the listing states compromise of a nerve root *or spinal cord*. Davis maintains that the objective testing shows compromise of the spinal cord by a compression fracture and positive Babinski testing. Davis contends that the ALJ's conclusion that the record does not show motor loss, muscle weakness, sensory or reflex is only partially accurate because the record shows evidence of muscle weakness. According to Davis, even though the record does not show positive straight leg raising or sensory loss, the ALJ's decision on medical equivalency cannot be based on a preponderance of the evidence when there are objective findings that satisfy almost every element of Listing 1.04. Davis also points out that at the initial level of review, his physical impairments were evaluated by Nakedae Cooper, a single decision maker and Listing 1.04 was not considered. (Tr. 66-73). And, Davis' counsel requested a medical expert opinion at the hearing because there was no medical opinion from any doctor on the issue of medical equivalence. (Tr. 53).

At step three of the disability evaluation process, the Commissioner must consider whether a claimant's impairments meet or medically equal any of the

relevant listing requirements of 20 C.F.R. Part 404, Subpart P, App. 1; 20 C.F.R.

§ 404.1520(a).  An impairment that meets only some of the medical criteria,

but not all does not qualify, despite its severity.  *See Sullivan v. Zebley*, 493 U.S.

521, 530 (1990).  Conversely, a claimant who meets the requirements of a listed

impairment will be deemed conclusively disabled, and entitled to benefits.  *See*

*Jones v. Comm'r of Soc. Sec*., 336 F.3d 469, 474 (6th Cir. 2003); *Berry v. Comm'r*

*of Soc. Sec*., 34 Fed. Appx. 202, 203 (6th Cir. 2002).   The burden of proof for

establishing that an impairment meets or equals the requirements of a listed

impairment rests with the claimant.  *See Foster v. Halter*, 279 F.3d 348, 354 (6th

Cir. 2001).  An impairment or combination of impairments is considered medically

equivalent to a listed impairment ". . . if the symptoms, signs and laboratory

findings as shown in medical evidence are at least equal in severity and duration to

the listed impairments."  *See Land v. Sec'y of Health & Human Servs*., 814 F.2d

241, 245 (6th Cir. 1986) (per curiam).  In instances where the ALJ fails to address

a listed impairment, if the plaintiff raises a substantial question that he meets or

medically equals the listing, then the ALJ's decision may be set aside.  *Smith-*

*Johnson v. Comm'r of Soc. Sec*., 579 Fed. Appx. 426, 433 (6th Cir. 2014) (Where

the ALJ decision does not discuss a listing subsequently raised in objection, the

court "must determine whether the record evidence raises a substantial question as

to [the claimant's] ability to satisfy each requirement of the listing.").  But, under

the circumstances here, that is, where the ALJ has addressed the contested listing

and the plaintiff challenges the manner in which the ALJ addressed it, the ALJ's

decision will not be disturbed if it is supported by substantial evidence.  *See*

*Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (The Court is

limited to determining "whether the ALJ applied the correct legal standards and

whether the findings of the ALJ are supported by substantial evidence.") (citation

omitted).

On March 27, 2017, before the ALJ's decision in this case, the Social

Security Administration changed the Social Security Ruling (SSR) about making

findings about medical equivalence at step three.  SSR 17-2p, 2017 WL 3928306

(Mar. 27, 2017).  Under SSR 17-2p, an ALJ need not obtain evidence from a

medical expert on equivalence if the ALJ believes the "evidence does not

reasonably support a finding that the individual's impairment(s) medically equals a

listed impairment."  2017 WL 3928306, at *4 (SSA Mar. 27, 2017).  The Ruling

goes further to say that the ALJ need not articulate his or her reasons for finding

that the individual's impairments do not medically equal a listing at step three.

Rather, the ALJ's "articulation of the reason(s) why the individual is or is not

disabled at a later step in the sequential evaluation process will provide rationale

that is sufficient for a subsequent reviewer or court to determine the basis for the

finding about medical equivalence at step 3." *Id.* at *4.[1]

---

[1] SSR 17-2p provides that the ALJ is not required to obtain an expert opinion on equivalence if she believed the evidence did not reasonably demonstrate that Davis met or equaled a listed impairment.  SSR 96-6p, which SSR 17-2p replaced, previously required an ALJ to obtain a medical opinion on equivalence.  Several courts in this district have concluded that SSR 17-2p removed the requirement to obtain a medical opinion on equivalence.  *Dobbs v. Comm'r of Soc. Sec.*, 2019 WL 4196505, at *4 (E.D. Mich. Aug. 19, 2019), report and recommendation adopted, 2019 WL 4189485 (E.D. Mich. Sept. 4, 2019) (citing *Cooper v. Comm'r of Soc. Sec.*, 2019 WL 2240711, at *5 (E.D. Mich. Apr. 8, 2019) (collecting cases holding that SSR 17-2p makes clear that an ALJ is not required to obtain a medical expert's opinion before making a finding that an individual's impairments do not meet or equal a listed impairment), report and recommendation adopted, 2019 WL 2208151 (E.D. Mich. May 22, 2019).  Notably, the legal basis for this requirement was not found only in SSR 96-6p.  Rather, case law holding that an ALJ must consider an expert's opinion on the issue of equivalence relied on specific language from the regulations governing the Commissioner's assessment of medical equivalence.  *See e.g.*, *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) (citing 20 C.F.R. § 404.1526(b) ("Medical equivalence must be based on medical findings.... We will also consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence."); *Retka v. Comm'r of Soc. Sec.*, 70 F.3d 1272; 1995 WL 697215, *2 (6th Cir. 1995) (table) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)) ("We also consider the opinion given by one or more medical or psychological consultants designated by the Commissioner.").  Social Security Rulings "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).  While Social Security Rulings do not have the force of law, they are an agency's interpretation of its own regulations that are "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation."  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx 496, 498 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004) (citations omitted)).  The Court does not have occasion to decide whether SSR 17-2p conflicts with the duly enacted regulations cited above, because in this case, if there were an error in failing to obtain an opinion on medical equivalence, the undersigned finds it harmless based on the detailed assessment of the medical evidence contained in this report. Compare, *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 557 (6th Cir. 1995) (Applying *Chevron* deference to Social Security Ruling) with *Smith v. Berryhill*, 139 S. Ct. 176, 1778 (2019) (*Chevron* deference does not extend to Social Security Administration's interpretation of the scope of judicial review).

In the view of the undersigned, the ALJ's step three determination is supported by substantial evidence.  On the date of the ALJ's decision, Listing 1.04A provided:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> * * *

20 C.F.R. § Pt. 404, Subpt. P, App. 1 (effective 4/2/18-5/21/18).  Davis maintains that a preponderance of the evidence shows that he medically equaled Listing 1.04A.[2]

---

[2]  To the extent that Davis suggests the court should apply a preponderance of the evidence standard to its review of the ALJ's equivalency analysis, the undersigned finds this suggestion meritless.  As set forth in 20 C.F.R. § 404.953, the ALJ issues a decision based on the preponderance of the evidence in the hearing record, which is in accord with SSR 17-2p. However, this court is bound by 42 U.S.C. § 405, which mandates that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive … ."  Accordingly, the court must apply the substantial evidence standard to the review of the factual basis of the ALJ's decision on equivalency.

In reviewing the ALJ's decision for substantial evidence, the undersigned is guided by two principles.  First, under SSR 17-2p, the court must look at the ALJ's step three discussion as well as later portions of the decision to determine the basis for the step three finding.  Second, on substantial evidence review, the "court may look to any evidence in the record, regardless of whether it has been cited by the [ALJ]."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  To meet a listing, an impairment "must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).  Likewise, to show that an "unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [the claimant] must present medical findings equal in severity to all the criteria for the one most similar listed impairment."  *Id*. at 531 (emphasis in original); 20 C.F.R. § 416.926(a) (to equal a listing, an impairment must be "at least equal in severity and duration to the criteria of any listed impairment").

To meet Listing 1.04A, after establishing the existence of either a compromised nerve root or a compromised spinal cord, a claimant must also establish (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) and (2) which is accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive

straight-leg raising test (sitting and supine).  Here, the ALJ explained that Davis

failed to carry his burden to show that he satisfied *all* the criteria of Listing 1.04A,

including limitation of the motion of the spine, motor loss accompanied by reflex

or sensory loss, and positive straight leg raise tests:

> In regards to the claimant's lumbar radiculopathy, listing
> 1.04 (entitled disorders of the spine) was reviewed,
> which requires the presence of a compromise of a nerve
> root.  The evidence of record is devoid of such evidence.
> Furthermore, even if there was evidence of nerve root
> compromise, the claimant does not show motor loss,
> muscle weakness, sensory or reflex loss.  The record also
> does not reveal spinal arachnoiditis with a need to change
> position or posture more than once every two hours or
> lumbar stenosis with an inability to ambulate effectively.
> Here, the claimant generally had normal gait, normal
> range of motion, normal muscle  strength and tone in all
> extremities, symmetrical functioning of accessory nerves,
> symmetrical functioning of hypoglossal nerves, normal
> sensation, normal coordination, and his upper and lower
> extremity deep tendon reflexes were intact bilaterally
> (Exhibits 1F/3, 2F, SF/5/l l/13/44 and 6F/5/26).

(Tr. 17-18).

As an initial observation, in her listing analysis, the ALJ was inartful in her

use of the term "compression" from the introductory paragraph of Listing 1.04

instead of the term "compromise" from subparagraph A.  That is, Davis correctly

points out that the introductory paragraph refers to a "compromise" of either the

nerve root *or* the spinal cord.  From the context, it appears that the ALJ incorrectly

used the term "compromise" in concluding that Listing 1.04 required

"compromise" of the nerve root and instead meant "compression" of the nerve root.  Indeed, whether a claimant has a "compromise" of the nerve root or "compromise" of the spinal cord, he must still show a "compression" of the nerve root to satisfy Listing 1.04A.  Davis does not dispute the lack of support in the record for "compression" of the nerve root.[3]  Further, while Davis points to some evidence in the record of weakness, atrophy, and limited range of motion of spine, he does not explain how these limited findings established that he medically equaled Listing 1.04A in the absence of nerve root compression, neuro-anatomic distribution of pain, and sensory or reflex loss established by positive straight leg raising testing.  *Dobbs v. Comm'r of Soc. Sec.*, 2019 WL 4196505, at *4 (E.D. Mich. Aug. 19, 2019), report and recommendation adopted, 2019 WL 4189485 (E.D. Mich. Sept. 4, 2019) (quoting *Bailey v. Comm'r of Soc. Sec.*, 413 Fed. Appx. 853, 855 (6th Cir. 2011) ("To establish the equivalent of nerve-root compression [Plaintiff] must demonstrate a lack of motor strength, a lack of sensory functions, and a positive straight-leg raising test, among other things…")).  Davis tries to make the case that because he was diagnosed with radiculopathy, there is sufficient evidence of "neuroanatomic distribution of pain," which is "generally defined as

---

[3]  The record is replete with evidence that Davis suffered a "compression" fracture of his spine, but the undersigned was unable to locate any evidence in the record suggesting a compressed nerve root.  While Davis' suggests that positive Babinski testing shows compromise of the spinal cord (ECF No. 11, PageID.526-527), he does not explain how such a finding demonstrates compression of the nerve root as required under the Listing.

complaints of pain directly generated by the compromised nerve." *Asbury v. Comm'r of Soc. Sec.*, 2019 WL 3916479, at *10 (S.D. Ohio Aug. 20, 2019), report and recommendation adopted, 2019 WL 4452677 (S.D. Ohio Sept. 17, 2019) (quoting *McDaniel v. Colvin*, 2016 WL 1271509, at *8-9 (S.D. W. Va. Mar. 31, 2016) (quoting *Cates v. Colvin*, 2013 WL 5326516, at *5 (N.D. Okla. Sept. 20, 2013)).  Yet, while it is true that Davis carries such a diagnosis, he also denied radiculopathy (Tr. 466), had normal straight leg raising (Tr. 317, 320), had normal sensory and motor function (see e.g., Tr. 273, 317, 346) and normal reflexes (see e.g., Tr. 302, 317, 343, 349, 352).  In light of such "scant" evidence of neuro-anatomic distribution of pain, the undersigned concludes that the ALJ's ultimate conclusion on Listing 1.04A is not undermined by Davis's arguments, as explained in further detail below.  *See Asbury*, at *10 ("The sporadic findings of neuroanatomic pain between the alleged onset date of December 2014 and the date of the ALJ's decision in December 2017 do not demonstrate that plaintiff's symptoms persisted over a period of time as required by § 1.00D.") (internal quotation marks and citation omitted).

The undersigned also agrees with the Commissioner that there is substantial evidence in the record to support the ALJ's conclusion that Davis did not medically equal Listing 1.04A and that the evidence cited by Davis is not sufficiently consistent or quantifiable to satisfy the Listing.  *See Biestek v. Comm'r*

*of Soc. Sec.*, 880 F.3d 778, 784 (6th Cir. 2017), aff'd, 139 S. Ct. 1148 (2019)

("Medical equivalency does not relieve claimants of the need to demonstrate the

long-term nature of an impairment.  The Commissioner's regulation allows for

variation in the number, type, or severity of the claimant's conditions, so long as

the claimant's overall impairment is "at least of equal medical significance" to a

listed impairment.  20 C.F.R. § 404.1526(b)(ii).  The regulations make no

provision, however, for claimants whose condition is reasonably found to be

sporadic or intermittent.").  As Davis points out, in early February 2016, his family

doctor Robin S. Thomas, M.D., observed "some muscle atrophy in his gluteal and

anterior thigh," (Tr. 466); and later that month, Dr. Nims observed no atrophy but

found that Davis' lower right extremity had weakness of "4/5."  (Tr. 18, 317).  Yet,

subsequently, Dr. Garg consistently observed that Davis had normal strength and

muscle tone in the lower extremities.  (Tr. 18-21, 343, 346, 349, 352, 355, 358,

361, 364, 367, 370, 373, 376, 379, 382, 385, 388, 391, 472).  The Commissioner

also correctly points out that evidence of atrophy is only acceptable as evidence of

significant motor loss if there are "circumferential measurements of both thighs

and lower legs," measurements that are absent here, thus undercutting the

probative value of Dr. Thomas's findings.  20 C.F.R. Pt. 404, Subpt. P, Appx. 1

§ 1.00E1.  Accordingly, the intermittent findings cited by Davis do not satisfy the

listing criteria and the ALJ's conclusions remain supported by substantial

evidence.  *See Biestek*, 880 F.3d at 784; *Richardson v. Comm'r of Soc. Sec.*, 2016 WL 6802652, at *6 (S.D. Ohio Nov. 17, 2016), adopted, 2017 WL 119742 (S.D. Ohio Jan. 12, 2017) (upholding ALJ's finding that record failed to show that the plaintiff met or equaled Listing 1.04A where record showed that symptoms such as motor loss and sensory or reflex loss were intermittent instead of sustained, and thus failed to meet durational requirement).

Similarly, while Dr. Nims observed a few months after his injury that Davis could not perform lumbar range of motion testing due to wearing an immobilizer (but had normal cervical range of motion) and he complained of a decreased range of motion to Dr. Garg, Davis does not point to any objective examination findings of limitation by either doctor that satisfies the listing requirement.  (Tr. 18-21, 343, 346, 349, 352, 355, 358, 361, 364, 367, 370, 373, 376, 379, 382, 385, 388, 391, 472).  As the Commissioner correctly points out, to satisfy the listing, Davis must show evidence of findings of "range of motion of the spine given quantitatively in degrees from the vertical position (zero degrees)."  20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 1.00E; *see also Thacker v. Soc. Sec. Admin.*, 93 Fed. Appx. 725, 728 (6th Cir. 2004) (claimant must "present specific medical findings that satisfy the various tests listed in the description of the applicable impairment").  Again, while Davis points to limited evidence in the record of weakness, atrophy, and limited range of motion of spine, he does not explain how these limited findings

establishes that he medically equaled Listing 1.04A in the absence of nerve root

compression, neuro-anatomic distribution of pain, and sensory or reflex loss

established by positive straight leg raising testing. Moreover, even if Davis can

point to substantial evidence to support a contrary decision, this Court may not

reverse the Commissioner's decision merely because it disagrees or because "there

exists in the record substantial evidence to support a different conclusion."

*McClanahan.*, 474 F.3d at 833.

> 2.      Assessment of subjective symptoms

"A claimant's testimony may be discounted if it is contradicted by the

medical reports and other evidence in the record."  *Harley v. Comm'r of Soc. Sec.*,

485 Fed. Appx. 802, 804 (6th Cir. 2012); 20 C.F.R. § 404.1529(c).  In assessing a

claimant's subjective symptoms, the rulings and regulations direct an ALJ to focus

on the consistency of the complaints with the other evidence in the record.

*Barncord v. Comm'r of Soc. Sec.*, 2017 WL 2821705, at *8 (S.D. Ohio June 30,

2017).  The Sixth Circuit has characterized SSR 16-3p as merely eliminating "'the

use of the term credibility ... to clarify that subjective symptom evaluation is not an

examination of an individual's character.'"  *Dooley v. Comm'r of Soc. Sec.*, 656

Fed. Appx. 113, 119 n.1 (6th Cir. 2016) (citation and internal quotation marks

omitted); SSR 16-3p, 2016 WL 1119029, at *1.  "SSR 16-3p instructs ALJs in

accordance with the applicable regulations to consider all of the evidence in the

record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment." *Coffey v. Comm'r of Soc. Sec.*, 2017 WL 3528952, at *8 n.4 (E.D. Tenn. Aug. 16, 2017). As to a claimant's subjective symptoms, the regulations require an ALJ to consider several factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 ("In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3).").

Davis argues that the ALJ's assessment of his subjective symptoms is not supported by substantial evidence. Specifically, Davis contends that the ALJ's conclusion that his allegations are not consistent with his activities of daily living is unsupported by substantial evidence. The ALJ discredited Davis' statements regarding personal care based on inconsistence. (Tr. 21). At the February 7, 2018 hearing, Davis testified that he could not independently get dressed, take a shower,

drive, cook, perform chores, or go grocery shopping.  (Tr. 38-39).  The ALJ

referred to the December 2015 function report in which Davis reported no

problems with personal care.  (Tr. 225).  Davis contends that this was error because

the function report was completed over two years before the hearing and because

the medical evidence in the record supports Davis' testimony.  According to Davis,

his treatment records from Dr. Garg dated from April 2016 – November 2017

document diagnoses of chronic lumbar radiculopathy and insomnia; he reported

migraine headaches that have been persistent, hip pain, and numbness and tingling,

and physical examinations noted decreased range of motion in the back; leg

weakness; limping gait (using a cane to walk); lumbar spine tenderness; positive

Babinski test; and bilateral tenderness in the lower extremity.  (Tr. 340-341, 343-

345, 347-349, 352-354, 356-357, 359-360, 362, 364-365, 368, 370-371, 373-374,

376-377, 379-380, 383-384, 386, 388, 391, 470-471).  Davis maintains that these

objective findings support his claimed limitations in performing personal care

because persistent hip pain, back pain, limited range of motion, and gait

disturbance reasonably would prevent him from getting dressed, bathing, and

perform household chores.

The Commissioner, on the other hand, argues that the ALJ's assessment of

Davis' subjective symptoms was entirely proper.  The undersigned agrees with the

Commissioner's assessment.  First, the Commissioner correctly points out that the

ALJ did not entirely discount his symptoms and pain, given that she limited Davis to sedentary work with a sit/stand option and several postural restrictions. *See* Social Security Ruling 96-9p, 1996 WL 374185 at *3 (1996) ("Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations."). The Commissioner further argues that the ALJ's assessment is entitled to deference and is well-supported by the record evidence. The undersigned agrees and concludes that the ALJ reasonably found that Davis' allegations were not consistent with his largely unremarkable examinations. The ALJ pointed to the evidence that generally, Davis ambulated with a normal gait, which was not unsteady, lurching, or unpredictable; as shown by the objective observations at the emergency department in October 2015, during the consultative examination in February 2016, and in Dr. Garg's treatment notes. (Tr. 20, 316-17, 463, 343, 346, 349, 352, 355, 358, 361, 364, 367, 370, 373, 376, 379, 382, 385, 388, 391, 472). Notably, in the "general" physical examination section, Dr. Garg's treatment notes often indicated that Davis limped and used a cane, yet, in the "neurologic" section, he then observed that Davis had a normal gait and station. (*See e.g*., Tr. 351-352; 354-355). Davis does not offer any reason why the ALJ was not permitted to rely on the neurologic assessments of Dr. Garg, instead of the general assessments. The ALJ also pointed to the evidence from the time of the accident in August 2015, the consultative evaluation in February 2016,

and Dr. Garg's note that Davis "appeared stable in the standing, sitting and supine positions, and was found to have a normal range of motion and no edema, warmth, or tenderness in his extremities," as well as his hip.  (Tr. 20, citing Tr. 273, 316-17, 343, 413; see also Tr. 343, 346, 349, 352, 355, 358, 361, 364, 367, 370, 373, 376, 379, 382, 385, 388, 391, 472).  The ALJ explained that Davis was generally found to have normal muscle strength and tone in all extremities, he had negative straight leg raise testing, and he could stand on one leg at a time without difficulty.  (Tr. 20, citing Tr. 316-17, 343, 382; see also Tr. 346, 349, 352, 355, 358, 361, 364, 367, 370, 373, 376, 379, 385, 388, 391, 472).  The ALJ noted Dr. Garg's observations that Davis had symmetrical functioning of accessory nerves, symmetrical functioning of hypoglossal nerves, normal sensation, normal coordination, and his upper and lower extremity deep tendon reflexes were intact bilaterally.  (Tr. 20, citing Tr. 343, 434; see also Tr. 346, 349, 352, 355, 358, 361, 364, 367, 370, 373, 376, 379, 382, 385, 388, 391, 472).  The ALJ also reasonably pointed out that the nature and extent of Davis' treatment was inconsistent with his allegations given that at the consultative examination in February 2016, about six months after he was shot, he reported that he had not had any treatment for his back or hip, despite ongoing pain.  (Tr. 20, 314).  *Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek

examination or treatment.  A failure to do so may cast doubt on a claimant's
assertions of disabling pain.").

Contrary to Davis' arguments, the undersigned finds it reasonable for the
ALJ to have relied on the 2015 function report to conclude that Davis was not as
impaired in his activities of daily living as he testified at the hearing.  This
conclusion is supported by his statement at the consultative examination in
February 2016, that he only needed "some help with bathing, dressing, and getting
out of bed."  (Tr. 21, 314).  *See* 20 C.F.R. § 416.929(c)(3)(i) (ALJ properly
considers daily activities when evaluating subjective symptom complaints).  The
ALJ was entitled to consider his earlier function report over his subsequent
testimony at the oral hearing.  *See Johnson v. Comm'r of Soc. Sec.*, 2019 WL
1102227, at *6 (E.D. Mich. Feb. 7, 2019), adopted, 2019 WL 1098926 (E.D. Mich.
Mar. 8, 2019) ("The ALJ did not err in adopting Plaintiff's statements to his
treating sources over his hearing testimony.") (citing SSR 16-3p, 2016 WL
1119029, at *1 (March 16, 2016) (ALJ must consider "consistency" of claimant
allegations of limitation alongside statements "made under other circumstances")).
And, to the extent that Davis can point to other evidence in the record that could
support his allegations, it does not undermine the substantial evidence on which the
ALJ relied.  Indeed, even if Davis can point to substantial evidence to support a
contrary decision, this Court may not reverse the Commissioner's decision merely

26

because it disagrees or because "there exists in the record substantial evidence to
support a different conclusion." *McClanahan*, 474 F.3d at 833.

The ALJ also noted that despite his reported pain, Davis was consistently
observed to be cooperative, alert, oriented, and to have good memory, normal
attention span, and the ability to concentrate. (Tr. 20). Davis also reported that his
pain symptoms did not affect his ability to remember to take his medication, he
was able to manage his own money, he could finish what he started, and he was
able to follow instructions well. (Tr. 21, 226-29). While the court appreciates the
perceived incongruence of assessing mental functioning factors in the context of
considering Davis' claims of pain, he has cited no authority supporting his
insistence that such a consideration is inappropriate. Indeed, using such a factor in
the assessment of subjective symptoms in is accord with 20 C.F.R.
§ 404.1529(c)(3), which provides that all "other factors concerning functional
limitations and restrictions due to pain or other symptoms" may be considered.
*See also* SSR 16-3p, 2016 WL 1119029, at *7 ("In addition to using all of the
evidence to evaluate the intensity, persistence, and limiting effects of an
individual's symptoms, we will also use the factors set forth in 20 CFR
404.1529(c)(3)."). Moreover, even if the court were to discredit this portion of the
ALJ's opinion, there remains substantial evidence to support the ALJ's assessment
of Davis's subjective complaints.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: October 31, 2019                       s/Stephanie Dawkins Davis
                                             Stephanie Dawkins Davis
                                             United States Magistrate Judge